IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-15-F

| | |
|---|---|
| SAMUEL LEE JONES, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, -24] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Samuel Lee Jones ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on September 17, 2012, alleging disability beginning June 14, 2011. (R. 21, 205-13). The claim was denied initially and upon reconsideration. (R. 21, 68-119). A hearing before an Administrative Law Judge ("ALJ") was held on June 3, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE")

appeared and testified. (R. 21, 34-55). On September 8, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 18-33). On November 27, 2015, after considering additional evidence submitted by Claimant, the Appeals Council denied Claimant's request for review. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

Case 5:16-cv-00015-F   Document 27   Filed 03/02/17   Page 3 of 19

disabled" as defined in the Act. (R. 28). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 23). Next, the ALJ determined Claimant had the severe impairments of history of prostate cancer, mild degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), asthma, and anxiety disorder. *Id.* The ALJ also determined that Claimant's alleged bilateral pain and weakness was a non-medically determinable impairment and non-severe. *Id.* At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24-25). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate restrictions in activities of daily living, mild difficulties in social functioning and in concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (R. 24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: frequently balance, stoop, and kneel, and occasionally crouch, crawl, and climb, but should avoid working in environments with concentrated respiratory irritants due to COPD or in confined spaces due to anxiety impairment. (R. 25-28). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 27). At step four, the ALJ concluded Claimant is able to perform his past

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

relevant work as a shipping and receiving weigher. (R. 28).

Claimant alleges the following errors by the ALJ: (1) failure to perform a function-by-function analysis in making the RFC determination; (2) failure to analyze the Ruling 96-7p factors in the credibility determination; and (3) determining the job of shipping and receiving weigher was past relevant work. Pl.'s Mem. [DE-19] at 8-13.

## V. DISCUSSION

### A.  The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-

8p, 1996 WL 374184, at *7.

### 1. Function-By-Function Analysis

In *Mascio v. Colvin*, the Fourth Circuit explained that Ruling 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p)).

Here, the ALJ failed to perform a function-by-function analysis. (R. 25-28). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite the ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

Claimant contends that the ALJ failed to justify the RFC determination and that he is not capable of performing light work because he tires easily due to his COPD and asthma and his ability to stand and walk is limited by lower extremity and back pain. Pl.'s Mem. [DE-19] at 10-11. In

6

support, Claimant cites a consultative examination performed by Dr. Staneata (R. 374-78) and unspecified medical treatment notes. *Id.* at 11. Claimant's contention lacks merit.

The ALJ concluded that Claimant can perform a limited range of light work, specifically including limitations to frequent balancing, stooping, and kneeling; occasional crouching, crawling, and climbing; and avoid working in environments with concentrated respiratory irritants due to Claimant's COPD or in confined spaces due to Claimant's anxiety impairment. (R. 25). In determining Claimant's RFC, the ALJ thoroughly considered Claimant's descriptions of his limitations, the medical treatment records, and the opinion evidence, including the evidence noted by Claimant, and specifically addressed the issues raised by Claimant related to his COPD, asthma, and back and lower extremity pain. (R. 25-28).

The ALJ first discussed Claimant's COPD and asthma. (R. 25-26). The ALJ noted that Claimant received treatment in the emergency room in January 2011 for pneumonia associated with asthma and that on follow-up with his primary care physician on February 1, 2011 it was noted that Claimant was feeling better, his shortness of breath, coughing, and wheezing had improved, and he was directed to continue Albuterol and Advair was added for maintenance. (R. 25, 348-51, 415-19). Claimant returned to his doctor with complaints of a persistent fever on February 9, but denied shortness of breath, coughing, and wheezing. (R. 343-46). Claimant's pneumonia was noted as "currently resolved" by a February 23 follow-up visit and he was continued on asthma mediation and scheduled to return in three months. (R. 339-41). The ALJ noted that at the May 2011 follow-up Claimant denied shortness of breath or chest pain and his respiratory examination was unchanged and normal. (R. 26, 333-37). Claimant's asthma was characterized as stable with medications. (R. 335). The ALJ considered Dr. Staneata's observation that in January 2013 Claimant had some

7

decreased breath sounds at bilateral bases, rare wheezes, and a dry cough. (R. 26, 376). Claimant reported to Dr. Staneata that he had frequent breathing problems but his medications help his symptoms and that he recently ran out of Advair. (R. 374). Dr. Staneata concluded that Claimant would suffer frequent exacerbations without his asthma medication and could not work at extreme temperatures. (R. 377). The ALJ acknowledged that Claimant presented in the emergency room in September 2013 for an asthma flare with shortness of breath, coughing, wheezing, and respiratory issues. (R. 26, 384-88). The treatment notes indicate that Claimant's condition was exacerbated by smoke and allergen exposure, prior episodes were rare, and Claimant had been out of Advair for many months. (R. 384). After receiving respiratory treatment and oral prednisone, Claimant's symptoms improved significantly. (R. 387). Finally, the ALJ noted that Claimant established care with a new treatment provider in December 2013 and on examination had unlabored breathing and normal breath sounds. (R. 26, 478-80). Claimant also reported not needing his Albuterol in several months and denied shortness of breath, wheezing, and cough. (R. 27, 478-79).

The evidence discussed by the ALJ indicates that Claimant's COPD and asthma were well-controlled by medication, and "it is well established that '[i]f an impairment can be reasonably controlled by medication or treatment, it is not disabling.'" *Finley v. Astrue*, No. 5:08-CV-209-D(1), 2009 WL 2489264, at *12 (E.D.N.C. Aug. 13, 2009) (unpublished) (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Moreover, Claimant has pointed to no evidence not considered by the ALJ and the court may not re-weigh the evidence and substitute its own conclusions for those of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, the ALJ's limitation that Claimant avoid working in environments with concentrated respiratory irritants is adequate to account for Claimant's COPD and asthma in the RFC.

8

The ALJ also considered Claimant's degenerative disc disease. (R. 26). The ALJ acknowledged Dr. Staneata's observations at the January 2013 consultative examination that claimant was limping, had difficulty standing from a seated position, and was using a one-point cane; his thoracolumbar testing showed range of motion of forward flexion to 80 degrees and at 10 degrees with extension, lateral flexion, and rotation, bilaterally; and his bending and squatting was limited.[2] (R. 26, 376). Claimant complained of bilateral lower extremity pain and weakness, stating he cannot stand or walk for "a long time," and he reported taking ibuprofen for pain, which helped some with his symptoms. (R. 374). However, the ALJ also cited x-rays from February 2013, which showed only mild degenerative disc disease at L2-L4 and T8-T9, and a December 2013 examination by Claimant's treatment provider that revealed normal range of motion with no joint crepitation or pain on motion. (R. 26, 381-82, 479). Finally, the ALJ considered that Claimant does not have any significant anatomical structural deformities or nerve root compression that might be expected based on the degree of back pain alleged; he has not required aggressive measures for symptom relief such as steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program; and there is no indication that any treating physician has prescribed the use of a cane or walker. (R. 27). The ALJ found that based on Claimant's treatment regimen his symptoms were "not as intractable as alleged." *Id.* The ALJ appropriately considered the nature of the treatment Claimant received. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. June 1, 2015) (unpublished) ("[I]f all that the claimant needs is conservative treatment, it is

---

[2] The ALJ assigned little weight to Dr. Staneata's opinion, noting it was a one-time examination, she did not have the benefit of reviewing Claimant's medical records, and her opinion was based on Claimant's subjective complaints. (R. 27). Claimant did not challenge the weight assigned to Dr. Staneata's opinion, and the ALJ considered appropriate factors, including treatment relationship and consistency, in assessing the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

9

reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). Again, Claimant has cited no evidence not considered by the ALJ and the court may not reweigh the evidence. Accordingly, the ALJ's RFC for a limited range of light work sufficiently accounts for Claimant's back and lower extremity pain.

Despite the ALJ's failure to conduct a function-by-function analysis, the ALJ's RFC assessment does not frustrate meaningful review. The evidence cited by Claimant does not support additional restrictions on walking and standing, and substantial evidence supports the ALJ's determination that Claimant can perform a reduced range of light work. *See Richardson v. Berryhill*, No. 5:16-CV-83-BO, 2017 WL 605287, at *2 (E.D.N.C. Feb. 14, 2017) (unpublished) (distinguishing *Mascio* and finding remand unnecessary despite the ALJ's failure to conduct a function-by-function analysis where the ALJ sufficiently addressed the relevant limitations and functional capacities). Accordingly, the ALJ's failure to conduct the function-by-function analysis does not require remand in this case.

### 2. Credibility Determination

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for

10

the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant contends that the ALJ failed to analyze the factors outlined in Ruling 96-7p and that Claimant's testimony is supported by the objective medical evidence. Pl.'s Mem. [DE-19] at 12-13.

11

Claimant cites his testimony that since having prostate surgery he lacks the stamina to perform daily activities, he experiences leg pain that prevents him from prolonged walking and standing for more than ten minutes at a time, he experiences shortness of breath with activity due to COPD that interferes with his daily activities, he can lift no more than five to ten pounds, he spends most of his day in a recliner to relieve his pain, and he utilizes a cane. *Id.*

The ALJ found Claimant's testimony not entirely credible and, contrary to Claimant's assertion, thoroughly explained this finding:

> [C]laimant's allegations of functional limitations are not supported by the longitudinal record. The claimant does not have any significant anatomical structural deformities, and there is no evidence of nerve root compression that might be expected based on the degree of back pain alleged. Further, the claimant has not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment or enrollment in physical therapy or a pain management program. There is no indication that any treating physician has prescribed the use of a cane or walker. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged. In regards to prostate cancer, he did not receive chemotherapy or radiation treatment. In December 2013, he told Ms. Brooks that his last emergency room visit for asthma and COPD was in July 2013, but that he had not required hospitalization, and had not needed Albuterol for several months (Exhibit 9F). At the hearing, the claimant testified that he can vacuum, and occasionally cuts the grass wearing a mask, or someone does it for him. His sisters[] help[] with the household chores, and [he] occasionally goes to their home for meals. He takes Celebrex and Advil or Tylenol for back pain, and is most comfortable sitting in a recliner with a pillow behind [his] back. He said he does not like being around a lot of people because of claustrophobia and COPD. The claimant testified that he continues to smoke a pack of cigarettes every four days, but is trying to quit. He belongs to a social group call[ed] "The Brotherhood" that mentors to the young, visits rest homes, do[es] handiwork, cut[s] grass, and use[s] [a] pressure washer for others. H[e] testified that his part in the group was to make the calls, and keep the records, but no physical work. The claimant's activities as discussed above are inconsistent with his allegations of debilitating symptoms.

(R. 27). Furthermore, the ALJ expressly considered several of the Ruling 96-7p factors, including Claimant's daily activities, pain, medications, other treatment, and other measures Claimant uses to

12

relieve his pain. *Id.*; *see* S.S.R. 96-7p, 1996 WL 374186, at *3 (July 2, 1996) (listing factors the ALJ must consider in addition to the objective evidence when assessing an individual's credibility).

In addition to the ALJ's discussion related expressly to credibility, the ALJ elsewhere noted that Claimant was followed every six months from March 2012 to March 2014 related to his prostate cancer and was "doing well from a urological standpoint." (R. 26, 440-56). It was noted at his August 2012, February 2013, and August 2013 visits that he had a low energy level and the treatment provider thought he was depressed, noting that he had been laid off from his job, had no insurance, and had erectile dysfunction, but no such complaint regarding low energy was noted at his next visit in March 2014. (R. 440-52). And, in December 2013, Claimant reported anxiety but denied any depression. (R. 26, 478-79). Finally, as discussed above, the ALJ fully considered Claimant's COPD, asthma, and back and lower extremity pain in formulating the RFC, and this discussion further informs the ALJ's credibility analysis, which is supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). Accordingly, Claimant's testimony does not undermine the ALJ's RFC assessment.

In sum, the ALJ appropriately considered Claimant's testimony, the medical evidence, and the opinion evidence in determining Claimant's RFC, providing "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Hines*, 872 F.2d at 59). Accordingly, the ALJ did not err in the RFC determination.

**B.  Past Relevant Work**

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental

13

demands of the claimant's past relevant work and then determines whether the claimant's impairments prevent him or her from performing such work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). In determining a claimant's ability to do past relevant work, the ALJ must consider the following:

> 1. the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
>
> 2. medical evidence establishing how the impairment[s] limit[ ] [his or her] ability to meet the physical demands and mental requirements of such work; and
>
> 3. in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207 (citing SSR 82-61, 1982 WL 31387, at *2). In other words, a claimant must show "an inability to return to [his] previous work (i.e., occupation), and not simply to [his] specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983). "An ALJ 'may rely on the general job categories of the Dictionary as presumptively applicable to a claimant's prior work.'" *Parker v. Colvin*, No. 4:13-CV-38-FL, 2014 WL 2604282, at *2 (E.D.N.C. June 11, 2014) (unpublished) (internal alteration omitted) (quoting *DeLoatche*, 715 F.2d at 151). "The same label, however, may be used in a variety of ways." *Id.* (quoting *DeLoatche*, 715 F.2d at 151). "Accordingly, a 'claimant may overcome the presumption that the [Commissioner]'s generalization applies by demonstrating that [his] duties were not those envisaged by the framers of the [Commissioner]'s category." *Id.* (quoting *DeLoatche*, 715 F.2d at 151).

14

Claimant contends the ALJ erred in finding that shipping and receiving weigher was past relevant work and that the ALJ did not fully explain his finding that Claimant could perform this work. Pl.'s Mem. [DE-19] at 10. Claimant specifically argues that at his warehouse job he mainly drove a forklift, which is classified as medium work. *Id.* The undersigned agrees that the ALJ erred in failing to fully explain his determination with regard to Claimant's ability to perform past relevant work.

At step four, the ALJ concluded Claimant is able to perform his past relevant work as a shipping and receiving weigher. (R. 28). The ALJ explained,

> Julie Sawyer-Little, the vocational expert, testified that the Dictionary of Occupational Titles, D.O.T. classified the claimant's past work as shipping and receiving weigher, D.O.T. # 222.387-074, light exertion with an SVP-2. Ms. Sawyer-Little testified that based on the hypothetical restrictions and residual functional capacity, the claimant could perform the shipping and receiving weigher job. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

*Id.* At the administrative hearing, the ALJ questioned Claimant about this past work in the following exchange:

> Q Okay. And you also did some work in shipping, receiving and drove a forklift for (INAUDIBLE)
>
> A Yes, sir.
>
> Q Can you tell us a little bit more about that?
>
> A (INAUDIBLE) is the place that makes Styrofoam plastics. It's very light weight. We was actually at the warehouse part, not at the manufacturer where we received and shipped products mostly, forklift, in and out of trucks. I guess the heaviest boxes were maybe 10 to 12 pounds. And that was pretty much it; receiving and shipping product, a lot of forklift riding; that was basically that.

15

>    Q Okay. Were -- so were you on the forklift for the most of the time you were at that job?
>
>    A Yes, sir.

(R. 40). The ALJ later asked the VE to classify Claimant's past work experience and it appears she classified this work as two jobs, industrial truck operator, DOT code 921.683-050, medium exertion, and SVP 3; and shipping and receiving weigher, DOT code 222.387-074, light exertion, and SVP 2. (R. 53). The ALJ posed a hypothetical to the VE with limitations consistent with the RFC adopted in the final decision, and the VE testified that the individual could perform the shipping and receiving job as normally performed pursuant to the DOT. (R. 53-54). Claimant's attorney at the administrative hearing, who also represents him in this matter, did not question the VE regarding her classification of Claimant's work.

The ALJ failed to address Claimant's testimony that he drove a forklift most of the time he was at the shipping and receiving job. (R. 28, 40). The VE classified this part of Claimant's work as industrial truck operator, which is a medium exertion occupation and in excess of Claimant's RFC determined by the ALJ to be a reduced range of light work. (R. 25, 53). The ALJ has a duty to explain such inconsistencies because, as the court has previously recognized, "the decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." *Parker*, 2014 WL 2604282, at *3 (quoting S.S.R. 82-62, 1982 WL 31386, at *3). The case of *Parker v. Colvin* is instructive in this regard.

In *Parker*, the claimant testified that his previous work in a donut store involved "washing windows, cleaning the building and the surrounding premises, unloading supplies, and occasionally

making donuts and driving donut trucks" and that making donuts involved extensive walking and required him to lift more than 25 pounds overhead, as well as carrying 50-pound bags of ingredients. *Id.* at *4. The VE classified the claimant's work as multiple jobs—a manager, which was light work, and a donut maker and other jobs, which were medium work. *Id.* The ALJ concluded in a summary fashion that the claimant could perform his past relevant work as a donut store manager. *Id.* at *3-4. However, the court found that the claimant's testimony regarding the jobs he performed as a manager involved work at the medium level and the ALJ did not discuss this testimony. *Id.* at *4. The court noted that the ALJ also failed to reconcile the finding that the claimant could perform his past relevant work "as performed" with the VE's testimony that the work as a manager involved jobs at the medium level. *Id.* Here, the ALJ determined Claimant could perform his past relevant work of shipping and receiving weigher "as actually and generally performed" despite the fact that Claimant testified this work involved mostly driving a forklift, which the VE classified as medium work (both generally and as performed). The ALJ's failure to reconcile this inconsistency is error requiring remand. *See Turrentine v. Colvin*, No. 1:15CV00256, 2016 WL 225699, at *5 (M.D.N.C. Jan. 19, 2016) (unpublished) (recommending remand where the claimant presented evidence that the duties of her job were not reflected in the DOT occupation that the ALJ and VE classified as the claimant's past relevant work and the job as the claimant described it exceeded the RFC); *Taylor v. Colvin*, No. 1:14CV629, 2015 WL 4726906, at *4 (M.D.N.C. Aug. 10, 2015) (unpublished) (recognizing that when a claimant's past work is a "composite job," or one involving the combined duties of more than one DOT occupation, it "has no equivalent in the DOT" and "'the ALJ must find the [claimant] capable of performing the composite job only if he or she can perform all parts of the job' as it was actually performed.") (quoting *Shealy v. Colvin*, No. 8:13-2383-RMG, 2015 WL 467726, at *12-13

17

(D.S.C. Feb. 4, 2015) (unpublished) (collecting cases)).

The Commissioner contends the ALJ did not err in assessing Claimant's past relevant work, noting that a claimant has the burden to establish the demands of his past relevant work, the ALJ is entitled to rely on the VE's testimony, and Claimant failed to raise the issue at the hearing. Def.'s Mem. [DE-25] at 8-9. Claimant met his burden when he testified that his job entailed shipping and receiving, but mostly driving a forklift, and the VE classified this work as *both* shipping and receiving weigher at the light level and industrial truck operator at the medium level. (R. 40, 53). The ALJ simply failed to fully address the relevant testimony of record from the VE and Claimant. Accordingly, it is recommended that this matter be remanded for further consideration regarding Claimant's ability to perform his past relevant work or other work existing in the national economy that the claimant can perform.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-24] be DENIED, and the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 16, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 2nd day of March 2017.

Robert B. Jones, Jr.
United States Magistrate Judge